# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs June 26, 2013

## STATE OF TENNESSEE v. GEORGE ANTHONY FLEVARIS

**Appeal from the Criminal Court for Sullivan County**
**Nos. S59,434-438; S59,473-476; S59,831-838  Robert H. Montgomery, Presiding Judge**

---

### No. E2012-00978-CCA-R3-CD - Filed July 18, 2013

---

Defendant pled guilty to fourteen counts of aggravated burglary, Class C felonies; one count of burglary of an automobile, a Class E felony; four counts of theft of property with a value in excess of $10,000 but less than $60,000, Class C felonies; seven counts of theft of property with a value in excess of $1,000 but less than $10,000, Class D felonies; one count of theft of property with a value in excess of $500 but less than $1,000, a Class E felony; and five counts of theft of property with a value less than $500, Class A misdemeanors. The defendant was sentenced as a Range I, standard offender to six years for each aggravated burglary, two years for the burglary of the automobile, six years for each Class C felony theft of property, four years for each Class D felony theft of property, two years for each Class E felony theft of property, and eleven months and twenty-nine days for each misdemeanor theft of property. The trial court ordered partial consecutive sentencing, resulting in an overall effective sentence of twenty-two years. The defendant now appeals the trial court's sentencing decision, urging that the trial court erred in its application of certain enhancement and mitigation factors. Because a trial court's mere error in the application of statutory enhancing and mitigating factors no longer provides any basis for reversing a defendant's sentence, and because the defendant's sentences are generally consistent with the principles and purposes of the Sentencing Act, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, and ROGER A. PAGE, JJ., joined.

Stephen M. Wallace, District Public Defender; K. Justin Hutton, Assistant District Public Defender (on appeal), Todd East, Kingsport, Tennessee (at trial) for the appellant, George Anthony Flevaris.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel; Barry P. Staubus, District Attorney General; and William Harper, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS AND PROCEDURAL HISTORY

Over a period of six to nine months beginning sometime in late 2010, the defendant engaged in an extended crime spree, burglarizing the empty private homes of numerous citizens of Sullivan County and stealing coins, jewelry, heirlooms, and personal effects in an ongoing effort to finance his relentless addiction to prescription pain pills. The defendant was arrested and released on bail on three separate occasions during this time period but continued to commit similar crimes upon his release. On July 12, August 30, and again on September 6, 2011, the Sullivan County Grand Jury indicted the defendant on numerous charges relating to this crime spree. On February 9, 2012, the defendant pled guilty to these charges.

At a sentencing hearing held on February 22, 2012, the trial court admitted the defendant's presentence report as well as some written victim impact statements into evidence. One victim also testified concerning the financial and emotional toll that the defendant's break-in had taken on her and her family. She testified that many of the items of jewelry that had been taken by the defendant held sentimental value and that they had either been damaged by the defendant in an effort to sell them for gold or had never been recovered at all. She testified that she had installed a new security system and floodlights after the break-in. She also related a story about her grandson having asked her during one of his visits if she kept her back door locked, explaining that he was afraid that the "bad man" might come back to her house.

The defendant also took the stand and testified concerning the incidents. He testified that he had only had a few minor brushes with the law until he moved to Tennessee, where he developed an addiction to prescription pills. He testified that he met some people who had a negative influence on him, discovered "Roxies," and soon "started putting drugs before my family." He testified that he began missing work because of the drugs. He expressed his regret to his victims for the pain that he had caused them and acknowledged that his actions had deprived them of sentimental heirlooms that could not be replaced by restitution. He acknowledged that he had placed the entire community in a state of fear and admitted that, in the end, he had been "nothing but a wrecking ball in Kingsport."

On cross-examination, the defendant discussed some of his prior convictions for

-2-

crimes such as possession of drugs, possession of drug paraphernalia, criminal trespass, violation of a restraining order, and assault. He discussed his recreational drug use, which he claimed began at age sixteen and eventually led to his addiction. He discussed the manner by which he picked his targets during his crime spree, which involved his walking around, looking for a house that was empty, and knocking on the door to see if anyone answered. The defendant specifically denied that he intentionally targeted the elderly. The defendant testified that after he broke into a home and obtained money, he did not continue to search for additional homes to burglarize. Instead, he took the money and immediately used it to buy drugs. While responding to a question from the trial court, the defendant testified that, on one occasion, he had asked an individual to assist him with moving some of the appliances that he had stolen, but he said that this individual did not know that the defendant was committing a crime.

At the conclusion of the evidence, the State requested that the trial court find and consider several enhancement factors in setting the defendant's sentence. The State asked the trial court to find that the defendant had a previous history of criminal behavior based on his prior convictions and drug use. The State requested the trial court to take judicial notice of the fact that the defendant had previously failed to comply with the terms of his supervised release. The State requested that the trial court find that the defendant had no hesitation about committing a crime when the risk to human life was high, because "any time you've got a home burglary there's a chance that homeowner could be there and there's a chance they could have a weapon." The State argued that there was a large financial loss as a result of the defendant's actions, which was reflected in the victim impact statements. The State concluded by arguing that a sentence of confinement was necessary to protect society and to avoid depreciating the seriousness of the offenses.

The defendant argued that the trial court should find and consider several mitigating factors. First, the defendant argued that his behavior neither caused nor threatened to cause serious bodily injury to anyone. Second, the defendant argued that his drug addiction acted as both a "provocation" and a grounds to explain his criminal conduct. Third, the defendant argued that his drug addiction acted as a "mental condition" that affected his reasoning. Finally, the defendant argued that he had cooperated with the authorities by confessing to the crimes when he was interrogated by the police.

After listening to these arguments from the parties, trial court found by a preponderance of the evidence that five statutory enhancement factors and one statutory mitigating factor were present. Specifically, the trial court found with respect to the statutory enhancement factors that: (1) the defendant had a previous history of criminal convictions or behavior in additional to those necessary to establish his sentencing range; (2) the defendant was a leader in the commission of an offense involving two or more criminal actors; (3) the defendant had failed to comply with the conditions of a sentence involving

release into the community; (4) the defendant had no hesitation about committing a crime in which the risk to human life was high; and (5) the defendant committed his offenses while on probation. *See generally* T.C.A. § 40-35-114 (2011) (listing available enhancement factors to be considered in sentencing). The trial court rejected most of the mitigating factors offered by the defendant, finding, for example, that the defendant's drug addiction was mere voluntary intoxication and provided no excuse for his behavior. *See generally* T.C.A. § 40-35-113 (listing potential mitigating factors to be considered in sentencing). The trial court did give the defendant credit for having made a voluntary confession of guilt. The trial court ultimately concluded "that the enhancing factors far and away outweigh any mitigating factors."

The trial court sentenced the defendant to the maximum sentence available to a Range I, standard offender with respect to each of his convictions: six years for each aggravated burglary, two years for the burglary of the automobile, six years for each Class C felony theft of property, four years for each Class D felony theft of property, two years for each Class E felony theft of property, and eleven months and twenty-nine days for each misdemeanor theft of property. Because the defendant committed most of his crimes while out on bail for committing other crimes, the law required the defendant to serve several of his sentences consecutively. *See* Tenn. Code Ann. § 40-20-111(b). All of his sentences for crimes committed after each of his separate arrests were ordered to be served concurrently (*i.e.* the counts within each case number were to run concurrently). With respect to his first arrest (and subsequent indictment), his most serious conviction was for a Class D felony theft, for which he was ordered to serve four years. With respect to his second arrest (and subsequent indictment), his most serious crime was an aggravated burglary, for which he was sentenced to six years. With respect to his third arrest (and subsequent indictment), his most serious crime was an aggravated burglary, for which he was sentenced to six years. With respect to his final arrest (and subsequent indictment), his most serious crime was aggravated burglary, for which he received a six year sentence. The trial court order the defendant to serve his sentences for his first three episodes in confinement, for an effective sentence of sixteen years (4+6+6) incarceration. The trial court ordered the defendant to serve his final six-year term on probation, for a period of twelve years. At a separate hearing held on March 13, 2012, the trial court ordered the defendant to pay $64,800 in total restitution ($450 per month) once he was released from prison and started serving his sentence on probation.

## ANALYSIS

The defendant argues that the trial court erred during sentencing by finding and applying two of the five enhancement factors that were used and by failing to apply one of the mitigating factors that was proposed. The burden is on the defendant to demonstrate the impropriety of his sentences. *See* T.C.A. § 40-35-401, Sentencing Comm'n Cmts. "[S]entences imposed by the trial court within the appropriate statutory range are to be

reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). "[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). The purposes and principles of sentencing include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," Tennessee Code Annotated section 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," Tennessee Code Annotated section 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," Tennessee Code Annotated section 40-35-103(5). *See State v. Carter*, 254 S.W.3d 335, 344 (Tenn. 2008).

The defendant claims that the trial court erred by failing to find and apply statutory mitigating factor (1), "[t]he defendant's criminal conduct neither caused nor threatened serious bodily injury." Tenn. Code Ann. § 40-35-113(1) (2012). In this regard, the defendant directs our attention to *State v. Ross*, in which our supreme court stated that this factor "focuses not on the circumstances of the crime," but rather "upon the defendant's *conduct* in committing the crime." 49 S.W.3d 833, 848 (Tenn. 2001) (emphasis in original). The defendant argues that because there was never anyone at home during any of his burglaries, the trial court's refusal to apply this factor was speculative and tantamount to a *per se* rule barring consideration of mitigating factor (1) in aggravated burglary cases, a concept rejected by the court in *Ross*. *See id.* We agree with the defendant.

The defendant also claims that the trial court erred by applying enhancement factor (2), "[t]he defendant was a leader in the commission of an offense involving two (2) or more criminal actors," and enhancement factor (10), "[t]he defendant had no hesitation about committing a crime when the risk to human life was high." T.C.A. § 40-35-114(b)(2); § 40-35-114(b)(10). We agree with the defendant that the trial court erred by applying these two enhancement factors on the facts of this case. There is simply no evidence in the record that the defendant ever had an accomplice or that anyone else was ever intentionally involved with his crimes. *See State v. Alexander*, 957 S.W.2d 1, 6 (Tenn. Crim. App. 1997). Nor, as the State concedes, is there anything in the record that would suggest that the defendant's actions ever posed a risk to human life that exceeded that which was inherently involved in the commission of his aggravated burglaries and other crimes. Consequently, we agree with the defendant that the trial court misapplied these two enhancement factors.

Although we conclude that the trial court erred with respect to its application of three statutory factors during the defendant's sentencing, the law is clear that the "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005. So long as there are

other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." *Bise*, 380 S.W.3.d at 706. Consequently, notwithstanding the trial court's errors, we must uphold the defendant's sentences if they are consistent with the relevant sentencing principles, such as the defendant's prospects for rehabilitation and society's need to impose sentences that reflect the severity of his offenses.

After a thorough review of the record, we can discern no manner in which any of the defendant's sentences are inconsistent with any of the statutory sentencing principles. The defendant does not dispute that the trial court found three valid enhancement factors, and the record supports the trial court's determinations in this regard. While it is true that the trial court sentenced the defendant to the maximum sentence with respect to each of his individual convictions, in so doing, the trial court did not "throw the book" at the defendant because it ordered only partial, not full, consecutive sentencing, and the partial consecutive sentencing that the trial court did order was near the minimum available to it under the law given that the defendant committed numerous crimes while he was out on bail for committing other crimes. *See* T.C. A. § 40-20-111(b) ("In any case in which a defendant commits a felony while the defendant was released on bail in accordance with chapter 11, part 1 of this title, and the defendant is convicted of both offenses, the trial judge shall not have discretion as to whether the sentences shall run concurrently or cumulatively, but shall order that the sentences be served cumulatively."). The trial court granted the defendant a significant boon by ordering such minimal consecutive sentencing, especially in light of the fact that the record might well have supported greater or even full consecutive sentencing on either of two possible statutory grounds: that the defendant had an extensive criminal history or that the defendant was a career offender who devoted his life to criminal acts as a major source of livelihood. *See* T.C.A. § 40-35-115(b)(1); § 40-35-115(b)(2).

During his crime spree, this particular defendant exhibited a complete inability to conform his behavior to social norms, committing aggravated burglaries within days of (and in one case, on the same day as) his release on bail from committing similar crimes. Also, as the defendant has acknowledged, his actions placed the entire community in a state of constant fear. In addition to violating the sanctity of his victims' homes, the defendant stole (and later damaged and/or sold) many priceless family heirlooms. As a result, his crimes took a toll on his victims that far exceeded what their financial loss alone would suggest and certainly exceeded any financial benefit that he might have gained by committing them. In light of these circumstances, the defendant's sentences – whether considered individually or in the aggregate – do not strike us as inconsistent with the principles and purposes of the sentencing act.

After a full review of the record, we conclude that the effective sentence of twenty-two years that was imposed in this case was reasonable and was consistent with the principles

and purposes of sentencing. *See* T. C. A. § 40-35-102; § 40-35-103. The defendant's claim that the trial court committed reversible error with respect to his sentencing is denied.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE